# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

| | | |
|---|---|---|
| ADVENTIST HEALTHCARE, INC., | * | |
| Plaintiff. | * | |
| v. | * | Civil Action No. AW-09-00559 |
| KATHLEEN SEBELIUS,[1] SECRETARY FOR HEALTH AND HUMAN SERVICES, | * | |
| Defendant. | * | |

******

## MEMORANDUM OPINION

Pending before the Court are Cross-motions for Summary Judgment (Doc. Nos. 14 and 17), in an appeal of the Secretary of Health and Human Services' ("HHS") final determination upholding the Centers for Medicare and Medicaid Services' ("CMS") denial of provider-based status to Plaintiff, Adventist HealthCare, Incorporated's off-campus emergency department ("Off-Campus ED"). The Court held a hearing on July 19, 2010, and has reviewed the cross-motions and supporting documents. For the reasons stated more fully below the Court GRANTS Defendant's Cross-motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment.

## FACTUAL BACKGROUND

Plaintiff, Adventist HealthCare, Incorporated, doing business as Shady Grove Adventist Hospital ("Shady Grove"), operates a hospital located in Rockville, Maryland, and has built an emergency care department nine miles from the main hospital in Germantown, Maryland. Defendant, Kathleen Sebelius, is the Secretary of HHS, who, as relevant to this case, is responsible for administering the Medicare and Medicaid Services program through CMS.

---

[1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kathleen Sebelius is the current Secretary of the Department of Health and Human Services and thus is automatically substituted as the Defendant in this action.

Defendant has provided a useful historical background on the Medicare program and the promulgation of the regulations concerning provider-based status that the Court will briefly recapture because it serves to place the issues involved in this appeal into context.

Medicare is part of the Social Security Act, enacted in 1965, and is "a federally-funded and administered health insurance program," for individuals over 65, disabled, or who have end stage renal disease, and who are otherwise entitled to Social Security retirement or disability benefits. 42 U.S.C. § 1395(c) (2006). There are four components of Medicare, which generally differ in that Part A provides for automatic coverage for certain "inpatient"[2] hospital services rendered to beneficiaries; Part B is a supplemental health insurance plan, in which beneficiaries pay a deductible and co-payment for physician and outpatient services; Part C permits Medicare beneficiaries to enroll in HMOs and PPOs; and finally Part D provides some prescription drug benefits. *See generally* § 1395. Defendant contends that only Part B is implicated in this case.

When the Medicare program was enacted in 1965, "all hospital inpatient and outpatient services were reimbursed by Medicare at the 'reasonable cost' rate," which essentially reimbursed hospitals "based on [the] hospital's cost in providing the services." (Doc. No. 17, 3.) Believing that the "reasonable cost" rate did not provide an incentive for hospitals to keep cost down because the more a hospital charged, the more it was reimbursed, Congress enacted the Social Security Amendment of 1983, which created a pre-set price range for services known as the Prospective Payment System ("PPS"). In other words, instead of permitting hospitals to set the rates of its services to which it then billed Medicare for reimbursement, CMS pre-determines how much a hospital can be reimbursed for certain services based on the PPS schedule. This amendment affected inpatient hospital services, and in 2000, this same reimbursement system

---

[2] Part A also provides coverage for care in a post-hospital skilled nursing facility and post-hospital home services. § 1395.

applied to outpatient hospital services, referred to as OPPS. Furthermore, the Medicare program permits a state to elect to a waiver of CMS's PPS and OPPS payment methodology under § 1814(b)(3) of the Social Security Act, codified at 42 U.S.C. § 1395(f)(b)(3). Maryland is the only state to have utilized this waiver and the Maryland Health Services Cost Review Commission ("HSCRC") generally sets the rate at which Medicare will reimburse inpatient services and "outpatient services provided at the hospital" rendered to Medicare beneficiaries in Maryland hospitals. Md. Code Ann., Health-Gen. §§ 19-201, -211 (West 2010).

Under the Medicare program hospitals and other health institutions must apply to CMS for designation as a "provider" in order to receive Medicare reimbursement. Of particular relevance to this case, facilities and institutions that are classified as hospital providers receive reimbursement for the fee charged by the medical professional in treating Medicare beneficiaries, as well as a facility fee that covers some of the additional costs associated with providing medical care to beneficiaries, such as the equipment used to furnish the services. On the other hand, facilities that do not classify as a hospital provider, such as doctor's offices, only receive reimbursement for the professional fee charged for rendering the services to Medicare beneficiaries. CMS contends that it has always recognized that providers have owned and operated subordinate facilities, including facilities that were not physically located at the provider's main location, and has permitted such entities to be classified as "provider-based" if certain qualifications were met, which entitles the facility to be reimbursed in the same manner as the main provider. In sum, if the main provider is classified as a hospital, then any entity or facility that obtains provider-based status as a subordinate and integral part of the main provider would receive a reimbursement for both the fee charged by the professional as well as an additional facility fee. CMS represents that because of the potential for higher Medicare

3

reimbursements for facilities that obtain provider-based status, the number of facilities seeking provider-based status increased after the 1983 Social Security Amendment, which did not contain a definition of provider-based. Thus, in 1998 CMS begin the process of clarifying the meaning of the term "provider-based", and adopted 42 C.F.R. § 413.65, which became the regulations setting forth the requirements for an entity to obtain provider-based status.

Specifically at issue in this case is the last sentence of § 413.65(d)(1), which provides:

> If a State health facilities' cost review commission or other agency that has authority to regulate the rates charged by hospitals or other providers in a State finds that a particular facility or organization is not part of a provider, CMS will determine that the facility or organization does not have provider-based status.

Defendant utilized the notice and comment rulemaking process in adopting the language of this regulation. In the Notice of Proposed Rulemaking ("NPRM"), Defendant explains that immediately following the language of the last sentence of § 413.65(d)(1) CMS stated, "We believe it would be inappropriate for a facility or organization to be considered freestanding for State rate-setting purposes, but [to seek] provider-based status under Medicare." (Doc. No. 17, 6.) CMS then received comments on the language of its proposed regulations and represents that it received two comments about the language in the sentence at issue. One commentator expressed concern that reliance on a commission's criteria was arbitrary, could discourage off-site expansion, and lead to shortages in care, while another commentator requested a delay in the implementation of this regulation to allow rate-setting commissions to make changes to its "definition of what rates it can regulate." (*Id.*) In response to these comments, CMS stated:

> We continue to believe it would be inappropriate for a facility to claim to be separate from the provider for State rate-setting purposes while also claiming to be an integral and subordinate part of the provider for Medicare purposes. To allow this practice would authorize providers to misrepresent their structures and affiliations in whatever way will yield the highest payment. Thus, we did not make changes to reflect the comment.

(*Id.* at 7.) CMS published the final regulation on April 7, 2000.

In August 2006, Shady Grove opened the Off-Campus ED approximately nine miles from the Shady Grove Hospital in Germantown, Maryland, to meet the needs of an increasing population in the surrounding area and to address traffic congestion concerns which according to Plaintiff, causes delays for both patients and emergency vehicles traveling to the main hospital's emergency department. Plaintiff contends that the HSCRC worked to help Plaintiff obtain provider-based status. For instance, before Plaintiff built the Off-Campus ED the State of Maryland did not have legislation that allowed for the creation of an emergency department that was not physically located at a main hospital. Thus Plaintiff claims that the Maryland legislature enacted laws to permit the development of off campus emergency departments, known as "freestanding medical facilities," where the facility would "provide a full range of emergency services, be open full time, be fully staffed and equipped as [an] emergency department, and be administratively part of the hospital." Md. Code. Ann., Health-Gen. § 19-3A-01 (West 2010). Plaintiff's Off-Campus ED meets all of the Maryland requirements to qualify as a "freestanding medical facility," and Plaintiff represents that it "is clinically, operationally, and administratively part of the Hospital," including meeting Maryland's license requirements; operating 24 hours, 7 days a week; being fully staffed with emergency care personnel, receiving ambulances directed from the county's emergency medical system; and having state-of-the art equipment for emergency surgery and advanced life support. Furthermore, Plaintiff explains that the Maryland legislature intended for the HSCRC and Shady Grove to work together in obtaining provider-based status for the Off-Campus ED as demonstrated in chapter 549 of the 2005 Laws of Maryland. Lastly, Plaintiff alleges that it has alleviated some of the traffic congestion concerns associated with the main hospital's emergency department.

Plaintiff filed a Provider-Based Attestation Statement ("Attestation") on July 27, 2006, with CMS seeking to obtain provider-based status for the Off-Campus ED. In the Attestation, Plaintiff included a September 15, 2005, letter from Robert Murray, the executive Director of the HSCRC, which stated that "the HSCRC has concluded that because the Germantown facility is not physically located at the Shady Grove Adventist Hospital or on the hospital's campus, the HSCRC will not regulate the rates paid to the facility."[3] (Admin. R. 430.)

On November 6, 2006, CMS informed Plaintiff that it was denying Plaintiff provider-based status specifically because Plaintiff did not satisfy the last sentence of § 413.65(d)(1).[4] CMS explained that the HSCRC's decision that it could not regulate the rates of the Off-Campus ED meant that the HSCRC did not consider the facility to be part of the main provider for rate-setting purposes. CMS reiterated its position, which was essentially articulated in the Notice of Proposed Rulemaking, that it "believed it inappropriate for a facility to be unregulated under the Maryland system, yet nevertheless be considered part of a hospital for Medicare purposes . . . ." (Doc. No. 17, 8.) Plaintiff asked for a reconsideration of CMS' decision on December 28, 2006, and submitted a follow-up letter from Murray dated June 5, 2007, explaining that "although [the HSCRC] lacks statutory authority to regulate rates paid to the Off-Campus ED, 'the HSCRC . . . has made no 'finding' that the Germantown facility is 'not part of' Shady Grove Adventist Hospital, as those terms are used in the federal regulation.'" (Doc. No. 14-2, 2.). On March 1, 2007, CMS affirmed its decision on the same grounds. Subsequently, on April 11, 2007,

---

[3] Plaintiff has informed the Court that the Maryland legislature has recently revised its laws to give the HSCRC authority to set the rates for facilities such as the Off-Campus ED. Plaintiff's argues that this new law, which will be effective July 1, 2011, moots the dispute over whether the Off-Campus ED qualifies for provider-based status starting in July 2011 and demonstrates that the Maryland legislature intended for this facility to be part of the hospital, thereby entitling it to provider-based status. At the hearing, Defendant made clear that it had not yet made a decision about the effect of this new legislation as it relates to the Off-Campus ED's ability to obtain provider-based status after July 2011 and this Court will not issue a ruling as to the revised law's future implications. Moreover, the Court finds that this new law is irrelevant to the dispute before it.

[4] The CMS does not dispute that Plaintiff has satisfied all other requirements to qualify as a provider-based entity pursuant to § 413.65.

6

Plaintiff filed an appeal with the Departmental Appeals Board ("Board") regarding CMS's decision. The Administrative Law Judge ("ALJ") ruled in favor of Plaintiff on May 8, 2008, finding that the HSCRC was not a cost review commission that had the authority to regulate the costs of the Off-Campus ED, and that in any event, the HSCRC had not found that the Off-Campus ED was not part of the main hospital. Defendant appealed the ALJ's decision to the Appellate Division of the Board on July 8, 2008. The Board reversed the ALJ's findings on December 31, 2008, and held that the HSCRC had found that the Off-Campus ED was not part of the main provider for "rate-setting purposes." (Doc. No. 14-2, 16.) Plaintiff filed for an appeal of the Board's final decision in this Court on March 6, 2009.

## I. Standard of Review

Pursuant to 42 U.S.C. § 1395cc(h), "an institution or agency that is dissatisfied with a determination by the Secretary that it is not a provider of services . . . is entitled to a judicial review of the Secretary's final decision . . . as is provided in section 405(g) of this title, except that, in so applying such sections and in applying section 405(l) of this title thereto, any reference therein to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human Services, respectively." Judicial review of the Secretary's final decision "is to be based solely on the administrative record, and the Secretary's findings of fact, if supported by substantial evidence, shall be conclusive." *MacKenzie Med. Supply, Inc. v. Leavitt*, 506 F.3d 341, 346 (4th Cir. 2007). As reiterated by the Fourth Circuit in *Mastro v. Apfel*:

> Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. [I]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.

270 F.3d 171, 176 (4th Cir. 2001) (internal citations omitted).

Moreover, the Plaintiff's challenge to the Secretary's final decision that the Plaintiff's Off-Campus ED does not met the requirements to be defined as a "provider-based" entity is governed by the Administrative Procedure Act. *See Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (explaining that the Administrative Procedure Act is incorporated into the Social Security Act at 42 U.S.C. § 1395oo(f)(1), and governs the petitioner's challenge of the Secretary's construction of § 413.85(c)); *see also Md. Dep't of Health & Mental Hygiene v. Ctrs. for Medicare & Medicaid Servs.*, 542 F.3d 424, 427 (4th Cir. 2008) ("Our review of CMS's decision is governed by the Administrative Procedure Act."). In relevant part under the Administrative Procedure Act, a court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . contrary to [a] constitutional right; . . . or unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute." 5 U.S.C. § 704, 706.[5]

In deciding whether an agency has acted arbitrarily, capriciously, or with abuse of discretion, courts consider whether the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Md. Dep't of Health & Mental Hygiene*, 542 F.3d at 428 (citing *Motor Vehicle Mfrs.*

---

[5] The Administrative Procedure Act also authorizes the court to set aside agency decisions that were made without respect to the proper procedure or that exceeded the scope of the agency's authority. § 706. Neither party disputes that Secretary and CMS has acted within its statutory authority in making decisions about whether a facility or organization qualifies for provider-based status and CMS observed the procedures required under § 1395cc(h)(1)(A) by holding a hearing on Plaintiff's dissatisfaction with CMS's decision before both the ALJ and the Appellate Division of the Board.

*Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)). As the Fourth Circuit reiterated, the court should "overrule the agency's decision only if [the court] find[s] that [the agency] has failed to consider relevant factors and committed 'a clear error of judgment.'" *Id.* The court should not substitute its judgment for that of the agency in deciding whether the agency has acted arbitrarily. *Id.*

Additionally, when an agency's decision is based on a construction of a statute or regulation that it administers, the court "must give substantial deference to an agency's interpretation of its own regulations." *Thomas Jefferson Univ.*, 512 U.S. at 512. As explained by the Supreme Court, the court "must defer to the Secretary's interpretation unless an "alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." *Thomas Jefferson Univ.*, 512 U.S. at 512. (citation omitted); *see also Md. Dep't of Health & Mental Hygiene*, 542 F.3d at 428 (explaining courts "must reject administrative instructions that are contrary to clear congressional intent"). As reiterated by both the Supreme Court and the Fourth Circuit broad deference is warranted when the court is reviewing agency interpretation of complex regulatory programs such as the Medicare program. *Thomas Jefferson Univ.*, 512 U.S. at 512; *Md. Dep't of Health & Mental Hygiene*, 542 F.3d at 428. In sum, in considering Plaintiff's challenge of the Secretary's final determination, the Court must affirm the Secretary's findings of fact that are supported by substantial evidence and must give substantial deference to the Secretary's interpretation of the pertinent regulation.

## ANALYSIS

The Court begins with a review of whether the agency's decision is contrary to its intent as clearly expressed in the plain language of the regulation or other written statements. Second, the Court must determine whether the agency's determination is arbitrary, capricious, or not in

9

accordance with the law by analyzing whether the decision is contrary to Congress's clearly expressed intent, ignored important aspects of the problem, or did not follow past decisions of the agency. Lastly, the Court will consider Plaintiff's claim that the Secretary's decision violates its constitutional right to equal protection.

## II. Plain Language of the Regulation

Plaintiff first argues that the Secretary's decision does not comport with the plain language of 42 C.F.R. § 413.65(d)(1). The language of 42 C.F.R. § 413.65(d)(1) provides:

> If a State health facilities' cost review commission or other agency that has authority to regulate the rates charged by hospitals or other providers in a State finds that a particular facility or organization is not part of a provider, CMS will determine that the facility or organization does not have provider-based status.

Specifically, Plaintiff contends the regulation is comprised of two elements: (1) that the cost review commission must have authority to regulate the rates charged by the hospital in question and (2) that the commission must "find" that the particular facility is "not part" of the main provider. Plaintiff argues that the ALJ correctly found that the HSCRC was not authorized to regulate the rates of the Off-Campus ED because the HSCRC lacked the authority to set the rates of facilities that are not physically located at the main hospital. Plaintiff also explains that the HSCRC does have authority to regulate rates of renal dialysis services and non-federal acute care hospitals, and thus the HSCRC does not have authority to regulate the rates charged by "all" hospitals. Defendant counters that there is substantial evidence in the administrative record to support the Board's finding that the HSCRC meets the federal regulation's plain words because the HSCRC does have the authority to regulate the rates of hospitals in the State of Maryland as defined under Maryland laws related to health care. The Board also explained that the applicable definition of the terms "hospital" and "provider" must fall within the definitions provided under § 400.202 of the Medicare statute, not the definition provided under Maryland law, and that §

10

413.65(d)(1) "does not require that a cost review commission regulate rates at every health care facility in the state, nor does it state that a cost review commission must regulate rates charged by a specific facility seeking provider based status." (Admin. R. 23.) The Court finds that the Board's reasoning is supported by the administrative record and that the Board's decision is based on a reasonable reading of the regulation.

Plaintiff also argues that, even accepting the Secretary's finding that the HSCRC qualifies as a cost review commission, the HSCRC did not "find" that the Off-Campus ED was not part of the main hospital as required by the plain language of the statute. Instead, the Plaintiff points to a letter from the executive director of HSCRC explicitly stating that the HSCRC has not found that the facility is "not part" of the main hospital. Apparently, CMS based its decision on the September 2005 letter from the HSCRC, submitted as part of the Plaintiff's filing of an Attestation to obtain provider-based status, which stated that the HSCRC would not regulate the rates of the Off-Campus ED because it was not located "at" the main hospital. CMS explained that it was denying the Off-Campus ED provider-based status because the HSCRC found that the Off-Campus ED was not "at" the Shady Grove Hospital, and thus it would not consider the facility to be "part" of the hospital for "purposes of rate regulation by the HSCRC." (Doc. No. 17.) Plaintiff asserts that the plain language of the regulation does not require a finding that the facility is not "at" the main provider, but instead, the regulation unambiguously states that the cost review commission must find that the facility is "not part" of the main provider. Plaintiff contends that the HSCRC's only reason for finding that the facility was not "at" the hospital was that it bore upon the HSCRC's jurisdiction to regulate rates of facilities not physically located at the hospital. Moreover, Plaintiff asserts that Defendant has added the language "for purposes of rate regulation" into § 413.65(d)(1) in reaching its

11

determination that the HSCRC had made a finding that the Off-Campus ED was not part of the hospital.

Defendant counters that the Secretary's intent regarding the effect of the findings of a cost review commission is made clear by the CMS's statements in the NPRM of 42 C.F.R. § 413.65. Specifically, CMS stated that it "considered it inappropriate for a facility or organization to be considered *freestanding* for State *rate-setting purposes*, but [to seek] provider-based status under Medicare." (Doc. No. 17, 6) (emphasis added). Defendant also points to evidence that it reiterated its position on this issue in response to the comments received on the proposed language of the last sentence of § 413(d)(1), as well as stated its intent to "deny provider-based status for any facility that was or claimed to be freestanding for State rate-setting purposes in both the 1998 and 2000 preambles to the NPRM. Moreover, Defendant argues that a commentator's request for a delay in the implementation of this language to permit the cost review commission to change its position on the facilities it can regulate, demonstrated that the Maryland provider community understood the effect of CMS' interpretation, specifically given that the HSCRC does not have the authority to regulate "freestanding" hospital facilities. Having reviewed the entire record and having considered the contentions of the parties, the Court believes that the Secretary's decision was based on sufficient evidence of the agency's intent as reflected in the NPRM and finds no grounds for overturning the decision.

### III. Arbitrary, Capricious or Otherwise Not in Accordance of the Law

Plaintiff argues that the Secretary's decision was arbitrary and capricious because it is contrary to Congress' expressed intent and the objectives of the Medicare program; ignored the fact that the Off-Campus ED operates like every other emergency care department and that the Secretary's denial of provider-based status would affect the continued operation of the Off-Campus ED; and goes against the agency's precedent.

### A. Congressional Intent

Plaintiff explains that the primary goal of Medicare was to provide health insurance coverage to the elderly, disabled, and the financially disadvantaged as expressed in the legislative history of Congress' enactment of the Medicare program as part of the Social Security Act in 1965. Plaintiff contends that Congress utilized the "reasonable cost" standard to reimburse hospitals to ensure that "hospitals would not be deterred, because of nonpaying or underpaying patients . . . from trying to provide the best of modern care," intended for payments to hospitals to be "fair to [the] institutions . . .," and sought to have "whatever method of computation . . . used . . . to approximate as closely as possible to the actual cost (both direct and indirect) of services rendered to" Medicare beneficiaries. (Doc. No. 14, 21-22.) Lastly, Plaintiff argues that the Medicare statute specifically exempts emergency hospital services from the requirement that a service provider must have an agreement with the Secretary to receive payments under the program, even for emergency services provided by a hospital located outside of the United States. Plaintiff asserts that CMS's decision to treat the Off-Campus ED as a doctor's office, when the record reflects that in every other respect it operates like any other hospital emergency department, deprives the emergency department of a facility fee for the overhead cost of providing services to Medicare beneficiaries totaling approximately $1.7 million a year. Plaintiff contends that such treatment is contrary to Congress' intent that hospitals be compensated as close to the actual cost of treating beneficiaries as possible and potentially threatens the Shady Grove Hospital's ability to meet the Congressional objective of providing high quality healthcare.

Plaintiff further posits that the Secretary ignored the unique situation of the Off-Campus ED in reaching her decision. Plaintiff asserts that the real reasoning behind the Secretary's weariness of classifying an entity as provider-based when it is considered freestanding by a

State's rate-setting commission is CMS's belief that allowing such a "practice would authorize providers to misrepresent their structures and affiliations in whatever way will yield the highest payment," which is expressed in CMS's response to the comments on this specific sentence of the regulations during the proposed rulemaking process. Plaintiff argues that the Secretary's decision is arbitrary and capricious because she ignored the fact that the Off-Campus ED was in every way integrated with the main hospital, that it was only seeking OPPS reimbursement because the HSCRC lacked the jurisdiction to regulate the rates of facilities not physically located at the main hospital, and that there was no evidence that the Off-Campus ED attempted to misrepresent its structure to obtain the highest reimbursement from the Medicare program. In fact, Plaintiff contends that the record reflects that the Off-Campus ED would receive less money if it were reimbursed under the Medicare OPPS plan than if its rates where set by the HSCRC.

Defendant counters that Plaintiff's reliance on the 1965 "reasonable cost" standard is unpersuasive because the PPS and OPPS systems replaced this standard in the 1983 amendments, specifically because of a concern that hospitals based their rates on how to get the highest reimbursement from Medicare and had no incentive to keep costs low. Moreover, Defendant explains that the Board considered Plaintiff's argument on Congressional intent and the fact that the Off-Campus ED operates like every other hospital emergency department, but simply found that any unfairness created by denying Plaintiff's Off-Campus ED provider-status was not the result of the agency's interpretation of the regulation, but instead was the State of Maryland's decision to elect a waiver of the Medicare PPS and OPPS plan and its failure to grant the HSCRC with the ability to set the rates of off-campus facilities. Moreover, Defendant contends that allowing a Maryland hospital to be reimbursed under OPPS when the state has opted out of the OPPS plan and sets its own rates "would potentially distort assessment of the

14

state's compliance with the statutory prerequisites to continue operating a waiver program."
(Doc. No. 17, 14.) Defendant notes that if the HSCRC had the authority to set the rates of a hospital's off-campus facility, then Plaintiff would have met the requirement of § 413(d)(1), and Shady Grove's Off-Campus ED would receive reimbursement of Medicare beneficiaries based on the HSCRC's established rates, which would have been "comparable to or more generous than the Medicare PPS rates." Again, the Court finds that the Board considered all of the arguments that Plaintiff presented to and the Board simply found that the potential problems caused by the denial of the provider-based status had little to do with the interpretation of the regulation and arose because of the State of Maryland's decision to elect to a waiver of the PPS and OPPS plans. Plaintiff has not presented a sufficient basis for the Court to override the Secretary's findings.

### B. Agency Precedent

Plaintiff claims that the Secretary's decision is not in accordance with the law because it goes against its own precedent established in *Johns Hopkins Health Systems*, DAB 1712 (1999). *Johns Hopkins Health Systems* is a 1999 decision from the Board's ruling that CMS (then known as Health Care Financing Administration) had wrongly denied provider-status to the Baltimore hospital's off-site oncology center based on HSCRC's determination that it could not regulate the rates of this off-campus facility. Plaintiff attempts to argue that the Board' decision in *Johns Hopkins Health Systems* held that the cost review commission's regulation of the off-campus site was irrelevant to the facility's ability to meet the criteria for provider-based status, and thus the Secretary's decision that the HSCRC does not regulate the rates of the Off-Campus ED should also be irrelevant. However, as Defendant explains, at the time that *Johns Hopkins Health Systems* was decided, CMS had only issued a Memorandum that contained eight requirements for obtaining provider-based status, neither of which concerned whether the cost review

15

commission had authority to set the rates of the facility seeking provider-based status. Thus, the Board found that CMS should not have considered the HSCRC's failure to regulate the rates of the John Hopkins off-campus oncology center because it was not a consideration required by the federally established criteria then in place. Defendant argues that the Board considered Plaintiff's argument about the precedential value of *Johns Hopkins Health Systems*, decided that the decision in that case was based on an outdated federal regulation that did not contain a requirement involving a cost review commission's authority to regulate the rates of hospitals, and found that CMS has since revised its regulations to make the decision of a cost review commission relevant to the ability to obtain provider-based status. The Court agrees with Defendant's interpretation of *Johns Hopkins Health Systems* and defers to the agency's decision that the case did not have precedential value such that CMS's decision to deny provider-based status to the Shady Grove Off-Campus ED was otherwise not in accordance with the law.

**IV.     Equal Protection Considerations – Violates Constitutional Right**

Plaintiff also argues that the Court must set aside the Defendant's decision to deny its Off-Campus ED provider-based status because it violates a constitutional right, namely the Equal Protection Clause of the Fourteenth Amendment, applicable to the federal government under the Due Process Clause of the Fifth Amendment. Under the Equal Protection Clause, the government is prohibited from intentionally discriminating against similarly situated persons. *Cleburne v. Cleburne Living Ctr.*, Inc., 473 U.S. 432, 439 (1985). When the distinction is based on a non-suspect classification then the plaintiff must prove that the distinction is not reasonably related to a legitimate government interest. *Id.* Moreover, the Plaintiff bears the burden of showing that it has been treated differently from others who are similarly situated. *Id.* Plaintiff claims that it is only seeking the "treatment that it would receive if it were located in any other state," which Plaintiff claims would entitled it to reimbursement under the Medicare OPPS

system. However, the Court agrees with Defendant, that Plaintiff is not similarly situated to hospitals in other states because Maryland is the only state to seek a waiver of the Medicare PPS and OPPS reimbursement systems. In essence, the State of Maryland's election of a waiver results in making this facility not similarly situated to off-campus emergency departments in other states. Thus, the Court does not find an equal protection violation.

## **CONCLUSION**

The Court finds that the administrative record reflects that the Secretary has considered and sufficiently addressed all of the arguments presented by Plaintiff during the hearings before its ALJ and Appellate Division Board, and that there is sufficient evidence to support the Secretary's final decision. For the reasons previously articulated, the Court must defer to the agency's well supported reasons for its decision and accordingly GRANTS Defendant's Cross-motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment. A separate Order shall follow this Memorandum Opinion.

July 30, 2010
   Date

/s/
Alexander Williams, Jr.
United States District Court Judge